# Brown *versus* Clegg *et al.*

1. Steam towboats or tugs are not common carriers as regards the vessels they have in tow and their cargoes.
2. The common-law rule as to common carriers applied to goods only, and not to vessels.

November 1st 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county*: No. 23, to October and November Term 1868.

This was an action of assumpsit by James Clegg and others against William H. Brown, commenced August 1st 1867.

[Brown *v.* Clegg.]

The paper-book did not contain the evidence, but from the history of the case it appeared that the suit was for charges for towing seven loaded coal-barges from Pittsburg to Cairo, and towing the barges empty back to Pittsburg. The claim as contained in the bill of particulars amounted to $2566.70. The defence was that the plaintiffs had undertaken to tow eight barges, and had sunk or lost one of them with its load of coal, and had damaged two others.

The facts were stated to be that the plaintiffs being owners of the steam-tug "Mary Davage," took charge at Pittsburg of eight loaded barges of the defendant to tow them to Cairo. When near the Steubenville bridge, three of the barges were driven against a stone pier, one was sunk and two injured. The seven barges were delivered at Cairo.

The defendant asked the court (Williams, J.) to charge:—

1. That when the owner of a steam tug undertakes the business and employment of towing loaded coal boats or barges from Pittsburg down the Ohio river to a distant market, and in such an undertaking is to have the exclusive possession and control of the tow, the owner of which is not to be present by himself or his agents throughout the trip, such owners will in such undertaking be liable as a common carrier, in the absence of any special agreement to the contrary.

2. If this point be declined, then that in such case, if, in midday and on an open river, the tug should collide against the pier of a bridge and sink one of her barges in tow, not from any sudden unforeseen accident, or from any inevitable cause, but from the pilot's having gradually lost the control of his boat and tow, under the usual and ordinary action of the wind and currents, the owners of the tug would be liable for the loss of the barge.

3. Or if declined, then that the liability of the tug-boat owner in this case would be similar in extent to that of a common carrier under a bill of lading, with usual exception against the perils of navigation, which would not excuse a collision in open day with a well known obstruction, as the pier of a bridge, there having been no sudden or unforeseen act or violence of a nature which caused the collision.

4. That when a steam-tug undertakes to tow a large fleet of loaded coal-boats down the Ohio river, as in this case, and just when arriving at the Steubenville bridge, well known as a dangerous place, where more than ordinary care and skill is requisite in management of the tow, the captain and one of the pilots go down to their dinner, leaving only one pilot and the mate on deck to manage the tow and carry it by the dangerous place, and the boat under the management or mismanagement of the pilot and mate, strikes one of the bridge piers and sinks one of her barges, the

[Brown v. Clegg.]

owners of the tug would be liable to the owner of the barge for its loss.

5. If the court decline the charge as requested in the last point, then, that under the circumstances there detailed, the owners of the tug would be so liable, unless they show affirmatively and clearly that the accident arose from some sudden and unforeseen cause which human skill and foresight could not have provided against.

6. That the facts in evidence are insufficient in law to excuse the plaintiffs for the loss of the barge.

The court declined to charge as requested in the 1st, 4th and 6th points, and answered the others as follows:—

" 2. The court declines to affirm this point without qualification. If the pilot 'gradually lost the control of his boat and tow,' without any want of proper and reasonable care and skill on his part, then the owners of the tug would not be liable for the loss of the barge; but 'if the pilot' gradually lost the control of his boat and tow 'through any negligence or want of proper and reasonable care and skill on his part,' then the owners of the tug would be liable for the loss of the barge, under the facts stated in the point.

" 3. The court declines to charge as requested in this point. Whether the loss of the barge was occasioned by the perils of the navigation or by the negligence, want of skill and care on the part of the pilot and crew of the tug, is a question of fact for the determination of the jury, and not a matter of law for the decision of the court.

" 5. Omitting the words 'sudden and unforeseen' before the word 'cause,' the point is affirmed."

The verdict was for the plaintiffs for $2554.07.

The defendant took a writ of error and assigned for error the answers to his points.

*H. Burgwin*, for plaintiff in error, cited Angell on Carriers, §§ 77, 129, 152; Riley v. Horne, 5 Bingh. R. 217; Germania Ins. Co. v. Pike, 8 Amer. Law Reg. October 1869, p. 614.

*J. Barton* and *R. Woods*, for defendants in error, cited Hays v. Paul, 1 P. F. Smith 134.

The opinion of the court was delivered, January 3d 1870, by

READ, J.—Are steam towboats common carriers in respect to the boats they have in tow, is a question of great importance in this state, and is distinctly presented for our consideration in this case. The distinction attempted to be drawn in the points presented to the court, would seem to take for granted that in all other species of towage, the owners of steam-tugs are not common

[Brown *v.* Clegg.]

carriers, but are responsible only for ordinary skill, care and diligence in their undertaking. The effort then is to make the owners of tugs, towing loaded coal-boats on the Allegheny, Monongahela, Ohio, Delaware and Schuylkill rivers, insurers of the boats and their cargoes towed by them; and legally responsible for all acts against which they could not provide, from whatever cause arising, the acts of God and the public enemy only excepted.

The common-law rule applied only to goods, and not to vessels or boats, to which it cannot be extended except by a forcible perversion of its terms and meaning. Towage by steam is a different and new business, to which should be applied the ordinary rules of bailees for hire, and this has been the clear understanding of the community in this state.

In Leech *et al. v.* The Owner of the Steamboat Miner, 1 Phila. R. 144, the action was for the loss of two boats loaded with coal, alleged to have been lost by the carelessness of the defendant, who had undertaken to tow them from the mines on the Monongahela, to the landing at Pittsburg.

Lowrie, J. (1st March 1848) charged the jury, " That the owners of a towboat, are not liable, as common carriers, for the safety of the boats and their contents, which they undertake to tow. In the performance of the duty, they are bound to exercise ordinary care and skill in directing their movements, and are liable if the accident arose from such want of care or skill."

In Leonard *v.* Hendrickson, which was the case of a raft taken in tow by a steamboat, Hepburn, J., in the same court in the next year (1849), held that the owners of the boat were not common carriers. This case was taken to the Supreme Court and there affirmed, and is reported in 6 Harris 40.

A very able opinion was delivered by Chambers, J., considering the question upon reason and authority, rejecting the Louisiana doctrine, and adopting the New York rule as unanimously laid down by the Court of Appeals in Wells *v.* Steam Navigation Company, 2 Comst. R. 207.

In Hays *v.* Paul, 1 P. F. Smith 134, the court below affirmed the defendant's point " that the owners of a steamboat, employed in towing boats, are not common carriers, and are only bound to take such reasonable degree of care and attention, that the owner of the boat or raft towed shall incur no damage or loss through the negligence or default of the owner of such steamboat, or of his servant." The case was tried and decided upon this principle, and affirmed by the Supreme Court.

It appears therefore to be the settled rule in Pennsylvania, that the owners of steam towboats are not common carriers.

I am aware of the opinion of Kane, J., in Vanderslice *v.* The Steam Towboat Superior, in Admiralty, in the District Court of the United States for the Eastern District of Pennsylvania,

reported in 2 Am. L. J., N. S. 347, and in 13 Law Rep. 399. The learned judge agrees with Chancellor Kent, and disagrees with Story, J., and with the case in 3 Hill 9, in holding steam-tugs common carriers. After stating various reasons for considering them common carriers, he says, "these considerations urge us very strongly, to hold the steam-tug to the rigid accountability of a common carrier, but I do not think it necessary to decide the question."

There is no date to this opinion, but as the libel was for damage done to a boat and her cargo in March 1846, and as neither the case in 7 Hill 533, nor that in 6 Harris 40, are referred to, it must have been prior to the publication of those cases, the last of which would have had a controlling influence over the mind of the judge. In 1 Wharton's Dig. (6th edition 1853) 203, under the head of Bailment 1—*Common Carrier*, par. 11, the digester, after stating the case of Vanderslice v. The Superior, as if it had been a positive decision that a steam-tug towing boats for hire was a common carrier, adds—"This case was affirmed on appeal to the Circuit Court by Grier, J., on the ground that there had been a want of ordinary care on the part of the steam-tug, but he declined to rule that she was a common carrier."

In the supplement to Wharton's Digest published in 1865, under the head *Bailments*, p. 42, "who are common carriers?" "3. Steam tugs are not liable as common carriers for the safety of vessels which they are towing, or of their cargo : Hitner v. Steam-tug Enterprise, Hitner v. The Steamer Napoleon, 3 Wallace 5." It is clear the dictum of Kane, J., did not form the grounds of decision in the case before him, nor of any other case in the third circuit, so far as we know. The decisions on this point in the state courts, and in those of the United States, entirely harmonize.

In Merrick v. Brainard, 38 Barb. 574–585 (1860)—the court say, "one who contracts to tow a boat laden with merchandise, for another, is not a carrier and does not assume, nor is he charged with, the duties and responsibilities of a carrier: Wells v. Steam Navigation Company, 2 Comst. 204. In the same case (4 Selden 375), it was held, that the owners of a towboat in the absence of an express contract limiting their liability, are bound to exercise ordinary care and diligence, and are liable for the want thereof."

In the Court of Appeals in Merrick v. Van Santvoord et al., 7 Tiffany (34 N. Y.) 208 (1866), this case was modified by reversing the court below, as to the defendant Van Santvoord, who had been held liable as a mere stockholder in a Connecticut corporation, but affirming the judgment as against the defendant Brainard, upon the principle just stated. "We have examined the questions raised by the appeal which affect the defendant Brainard, and think the judgment as to him should stand for the reasons assigned in the court below," in which all the judges concurred.

[Brown *v.* Clegg.]

Betts, J., in Abbey *v.* Steamboat R. L. Stevens, in the District Court of the United States for the Southern District of New York, in September 1861, 22 Howard's Practice Reports 78, said, "The tug is not to be regarded subject to the liabilities of a common carrier or insurer." The decision in The Princeton, 3 Blatchford's Circuit Court Rep. 54, by Nelson, J., one of the judges who decided the case of Alexander *v.* Greene, 3 Hill 9, looks in the same direction, and can bear no other interpretation. In The Steamboat Angelina Corning, 1 Benedict 109, Benedict, J., of the United States District Court for the Eastern District of New York, in 1867, held that a steam-tug is not a common carrier of the vessel she tows.

In The Steamer New Philadelphia, 1 Black 62, it seems to have been taken for granted, in the District and Circuit Courts, and in the Supreme Court, that the steam-tug New Philadelphia was not a common carrier of the coal-barge she had in tow, and the ground of claim by the libellant for the damages to the tow was, that they were occasioned by negligence and want of ordinary skill, care and prudence on the part of those who were intrusted with the navigation of the tug.

It may therefore be affirmed that by the law of Pennsylvania, and also of New York, as administered by the courts of those states, and by the courts of the United States in the second and third circuits, steam tugs or boats are not common carriers of the vessels they tow.

The cases in England are generally in the Admiralty, which has jurisdiction of towage, and which is often connected with salvage. In Symonds *v.* Pain, 6 Hurlst. & N. 709, which was an action by the owner of a smack, against the owners of a steam-tug employed to tow his smack out of the harbor, for negligence of the master of the tug, by which the smack was stranded, the declaration was in the common form for negligence in towing the plaintiff's vessel out to sea. The defence set up, was a special notice on the back of the printed receipts given by the defendants, exempting them from all liability for any loss or damage whether arising from, or occasioned by any supposed negligence or default of them or their servants, and the question was, whether the plaintiff had knowledge of this notice. The Lord Chief Baron expressed the opinion that the contract was upon the terms of the notice, and that it was evident the defendants did not undertake for the charge of 7*s.* 6*d.* to be insurers against accidents to the vessels they towed—and the plaintiff was then nonsuited. Upon a motion for a new trial in showing cause, defendants' counsel said, "This is not the case of a common carrier. There was no common-law obligation on the defendants to tow the plaintiff's vessel, but the liability depends on contract."

Baron Martin said, "I am of opinion that it was a question for

[Brown v. Clegg.]

the jury, what was the contract the plaintiff and defendants entered into, and that it was not a question of law for the judge to decide. Whether the plaintiff had knowledge of the notice by reason of having the receipts, was essentially a question of fact, and ought not to have been withdrawn from the consideration of the jury"—a new trial was granted; and upon a second trial before Erle, C. J., the learned judge left it to the jury to say whether the contract between the plaintiff and defendant, was made on the terms printed on the back of the receipts, and the jury having found in the affirmative, plaintiff elected to be nonsuited.

In The Minnehaha, 1 Lush. 335, and in the Judicial Committee of the Privy Council, Lord Kingsdown said, "When a steamboat engages to tow a vessel for a certain remuneration from one point to another, she does not warrant that she will be able to do so, and will do so, under all circumstances and at all hazards; but she does engage that she will use her best endeavors for that purpose, and will bring to the task competent skill and such a crew, tackle and equipments, as are reasonably to be expected in a vessel of her class. She may be prevented from fulfilling her contract, by a vis major, by accidents which were not contemplated, and which may render the fulfilment of her contract impossible, and in such case, by the general rule of law, she is relieved from her obligations. But she does not become relieved from her obligations because unforeseen difficulties occur in the completion of her task; because the performance of the task is interrupted or cannot be completed in the mode in which it was originally intended —as by the breaking of the ship's hawser. But if in the discharge of her task, by sudden violence of wind, or waves, or other accidents, the ship in tow is placed in danger, and the towing vessel incurs risks and performs duties which were not within the scope of her original engagement, she is entitled to additional remuneration for additional services, if the ship be saved, and may claim as a salvor, instead of being restricted to the sum stipulated to be paid for mere towage." In the cases on this subject the towage contract is generally spoken of as superseded by the right to salvage. In the case of the Julia in the Judicial Committee of the Privy Council, 11 Moore P. C. 210, 1 Lush. 224, Lord Kingsdown said, "When the contract was made, the law would imply an engagement, that each vessel should perform its duty in completing it, that proper skill and diligence would be used on board of each, and that neither vessel by neglect, or misconduct, would create unnecessary risk to the other, or increase any risk which might be incidental to the service undertaken."

So where a steam-tug to avoid being crushed by collision, let go her tow and slipped out from between the two vessels, and dropped astern, "It was admitted on all sides that this manœuvre

[Brown *v.* Clegg.]

was perfectly justifiable." (The Annapolis P. C., 5 Law Times Reports, p. 38.)

It is clear from these authorities that steam towboats or tugs are not by the law of England common carriers of the vessels they tow.

The cases in the United States which are supposed to express a contrary opinion are White *v.* Mary, 6 California 462, October Term 1856, where Justice Heydenfeldt, delivering the opinion of the court, says, " It is immaterial to consider, whether the defendant was or was not a common carrier, although I think she was, according to the most striking analogies:" Walston *v.* Myers, 5 Jones, North Carolina Law Reports 174, December 1857, where Judge Pearson said, " we are inclined to the opinion, that the defendants, John and Redding Myers, the owners of the steamboat, were common carriers, in respect to the plaintiff's flat they had in tow."

In Ashmore *v.* Penna. Steam Towing Trans. Co., 4 Dutcher 180, one judge upon a motion for a new trial deemed it unnecessary to decide whether a tower was a common carrier. Another judge held both upon principle and authority that he was not a common carrier. A third judge seemed to be of opinion that he was a common carrier; and the Chief Justice, who had tried the cause, and who had not charged the jury that the steamboat was a common carrier, concurred with the majority in dismissing the motion for a new trial.

In Sproul *v.* Hemmingway, 14 Pick. 1, a brig which was towed at the stern of a steamboat, employed in the business of towing vessels in the river Mississippi below New Orleans, was, through the negligence of the master and crew of the steamboat, over whom those in charge of the brig had no control, brought into collision with a schooner lying at anchor. It was held, that the owner of the brig was not responsible for the damage sustained by the schooner. There is nothing in this case showing that the court regarded the steamboat as a common carrier, and this is remarkable because the case of Smith *v.* Pierce, 1 Louisiana R. 349, in which the owners of steam towboats on the Mississippi were held liable as common carriers, had been decided in May 1830, and published in 1831, two years before the decision of the Massachusetts case.

Of the text-writers, Story on Bailments, 7th ed. § 496, says, " the owners of a steamboat, who undertake to tow freight-boats for hire, or undertake to tow vessels in or out of port for hire, are not common carriers, but are responsible only for ordinary care, skill and diligence in their undertaking." Such is the opinion also expressed in Angell on Carriers, 4th ed. 1868, § 86.

And in 1 Parsons on Shipping and Admiralty, p. 247, it is

[Brown *v.* Clegg.]

said " steam towboats are not generally considered common car-
riers in respect to the boats they have in tow."

The detailed examination we have made of the authorities upon
this point, show conclusively that in Pennsylvania the law is
definitely settled that steam towboats or tugs are not common
carriers as regards the vessels they have in tow, and their cargoes.
There is nothing in any of the other specifications of error, and
the judgment is therefore affirmed.